UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENRY BROWN

                    Plaintiff,              Civil Action No. 12-13402
                                            Honorable Robert H. Cleland
                                            Magistrate Judge David R. Grand
v.

CITY OF DETROIT and
LATONYA BROOKS,

                    Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [24]

This is a prisoner civil rights case brought pursuant to 42 U.S.C. § 1983 against Defendants the City of Detroit and Officer Latonya Brooks (collectively "Defendants") by *pro se* Plaintiff Henry Brown ("Brown"), who is incarcerated at Carson City Correctional Facility in Carson City, Michigan.  (Doc. #1).  Before the Court is Defendants' Motion for Summary Judgment.  (Doc. #24).  Brown filed a response (Doc. #33), and Defendants filed a reply (Doc. #35), to which Brown filed a surreply.  (Doc. #38).  An Order of Reference was entered on August 14, 2014, referring all pretrial proceedings to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A).  (Doc. #32).

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(Doc. #24)** be **GRANTED**.

II.     **REPORT**

A.      **Factual Background**[1]

Brown's complaint stems from a fatal shooting that took place at a barbershop in Detroit on June 14, 2010.  (Doc. #1).  JaJuan Harrison survived the shooting and is the only witness. Brown commenced this action alleging that an improperly suggestive photographic lineup resulted in his arrest for a crime he did not commit – namely, the June 14 shooting.  After being detained for 270 days, Brown was released because a DNA test showed that he was not the shooter.  Requesting damages related to his arrest and the 270 days he was detained, he now sues both the City of Detroit and Officer Brooks, the detective who conducted the photographic lineup.

In his complaint, Brown alleges that the photographic lineup violated his due process rights under the Fourteenth Amendment.  (*Id.* at 11-12).  Brown also alleges the following state and constitutional claims:   unreasonable seizure, false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress.  (*Id.* at 5-15).  He seeks a declaratory judgment, compensatory damages, and punitive damages.  (*Id.* at 16-17).

After discovery had commenced and Defendants filed their motion for summary judgment (Doc. #24), the City of Detroit filed for bankruptcy.  The district court then stayed this civil action and administratively closed the case on July 31, 2013.  (Doc. #28).  On June 30, 2014, Defendants gave notice that the bankruptcy stay had been lifted and requested that the case be reopened.  (Doc. #29).  The district court granted Defendants' request and reopened the case by order dated August 14, 2014.  (Doc. #31).  Defendants now seek summary judgment in their

---

[1] The factual background of Brown's claims was thoroughly described by the Court in its July 9, 2013 Order denying Brown's motion for leave to file a supplemental complaint and for discovery.  (Doc. #23 at 1-4).  The Court incorporates that information here by reference.

favor.  (Doc. #24).

**B.    Defendants the City of Detroit and Officer Latonya Brooks' Motion for Summary Judgment**

In their motion, Defendants present six arguments why they are entitled to summary judgment:  (1) Brown's Fourteenth Amendment due process claim fails because he cannot establish that the photographic lineup was unduly suggestive; (2) Brown's other civil rights claims are barred because he was arrested on a facially valid warrant signed by a magistrate and Brown has no evidence of the warrant being obtained by Officer Brooks' misconduct; (3) Brown's state law claims are barred because he cannot prove a lack of probable cause; (4) Brown's civil rights claims against Officer Brooks are barred by qualified immunity; (5) Brown's intentional infliction of emotional distress claim is barred by governmental immunity; and (6) Brown cannot identify any custom, policy, or practice of the City of Detroit that caused a violation of his rights.  (*Id.* at 11-17).

**C.    Standard of Review**

Federal Rule of Civil Procedure 56 provides:  "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it might affect the outcome of the case under governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the court of

the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

### D.     Analysis

#### a.  Brown's Due Process Claim Regarding the Photographic Lineup

Brown argues that the way in which Officer Brooks conducted the photographic lineup violated his due process rights under the Fourteenth Amendment. (Docs. #1 at ¶¶ 103-107; #33 at 8-10, 13). It was during this lineup that the lone witness, Harrison, identified Brown as the shooter. Due process requires that the procedure for making an identification not be unduly suggestive and that the identification be sufficiently reliable. *Williams v. Lavigne*, No. 05-1398, 209 F. App'x 506, 508 (6th Cir. Dec. 22, 2006). "A conviction based on identification testimony that follows a pretrial identification violates the defendant's constitutional right to due process whenever the pretrial identification procedure is so 'impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'"[2] *Tipton v. Carlton*, No. 06-5496,

---

[2] "[T]he guiding rationale behind this prohibition is not to ensure the reliability of identification

306 F. App'x 213, 218 (6th Cir. Dec. 29, 2008) (quoting *Ledbetter v. Edwards*, 35 F.3d 1062,

1070 (6th Cir. 1994)); *United States v. Sullivan*, 431 F.3d 976, 985 (6th Cir. 2005).

Yet the Sixth Circuit has held that "a suggestive preindictment identification procedure

does not in itself intrude upon a constitutionally protected interest." *Hutsell v. Sayre*, 5 F.3d 996,

1005 (6th Cir. 1993) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 113 n.3 (1977)); *Gregory v.

City of Louisville*, 444 F.3d 725, 747 (6th Cir. 2006) (citing *Manson*, 432 U.S. at 113).  To rise to

the level of a constitutional violation actionable under § 1983,[3] the evidence obtained through a

lineup must be used at trial.   *Hutsell*, 5 F.3d at 1005 (adopting the Seventh Circuit's

interpretation that *Stovall v. Denno*, 388 U.S. 293 (1967), and *Manson v. Brathwaite*, 432 U.S.

98 (1977), "do not establish a right to an impartial lineup as long as the evidence gained through

that lineup is not used at trial") (quoting *Hensley v. Carey*, 818 F.2d 646, 650 (7th Cir. 1987));

*Gregory*, 444 F.3d at 747 (citing *Manson*, 432 U.S. at 113) ("[T]he prosecution's use of the

identification at trial is a necessary intervening act for injury to occur and liability for any party

to attach.").   Moreover, a plaintiff asserting a § 1983 claim must allege a violation of the "core

right" to a fair trial.  It is not enough to allege a violation of the rule against admitting evidence

from unnecessarily suggestive lineups, which is simply a "prophylactic rule" designed to protect

the core right to a fair trial.  *Hutsell*, 5 F.3d at 1005 ("[I]t is only the violation of the core right

and not the prophylactic rule that should be actionable under § 1983.") (quoting *Hensley*, 818

F.2d at 648-49).

---

evidence, but to deter malfeasance by investigating officers."  *United States v. Watson*, 540 F.
App'x 512, 515 (6th Cir. 2013) (citing *Perry v. New Hampshire,* 132 S.Ct. 716, 726 (2012)).

[3] To demonstrate liability under § 1983 as to any particular defendant, a plaintiff must first
establish that that defendant acted under color of state law and that his actions violated rights
secured by the Constitution and/or laws of the United States.  *See Baker v. McCollan*, 443 U.S.
137 (1979).

In *Hutsell*, a plaintiff who was indicted and tried in state court (and subsequently acquitted) challenged a six-array photographic lineup, alleging that the way in which the officer conducted it caused him to be "unreasonably seized without probable cause and deprived of his liberty without due process of law in violation of the Fourteenth Amendment." *Id.* The Sixth Circuit held that even though the plaintiff had been tried – "and the lineup was presumably used at trial" – he "failed to state a claim for an alleged violation of a known constitutional right" because he was not challenging a violation of the core right to a fair trial. *Id.* Rather, the plaintiff "merely . . . purported [the] violation of a prophylactic rule which resulted in the deprivation of his liberty," and this was insufficient to save his § 1983 claim.[4] *Id.*

Here, like the plaintiff in *Hutsell*, Brown's Fourteenth Amendment due process claim regarding the photographic lineup does not rise to the level of a constitutional violation actionable under § 1983. Brown's allegations regarding the photographic lineup being unduly suggestive are practically identical to those of the plaintiff in *Hutsell* in that they fail to assert a violation of the core right to a fair trial. Brown instead argues that Officer Brooks "violated [his constitutional] right to due process because the identification procedure was so unnecessarily suggestive that it led to a mistaken identification."[5] (Docs. #33 at 14; #38 at 4-9). He focuses entirely on Officer Brooks' actions during the lineup and never once mentions anything about a fair trial. His claim is solely based on him being detained for 270 days as a result of a mistaken

---

[4] The court did note that there could be "extraordinary circumstances," such as police coercion through physical force, that might push an unduly suggestive lineup, on its own, to the level of a constitutional violation. *Hutsell v. Sayre*, 5 F.3d 996, 1005 (6th Cir. 1993) (citing *Hensley v. Carey*, 818 F.2d 646, 650 n.4 (7th Cir. 1987)). But it held that the plaintiff had not raised any such circumstances. *Id.*

[5] As to this allegation that the lineup was unnecessarily suggestive, Brown argues that Officer Brooks showing a single picture of him to Harrison "when Harrison had not picked anyone out yet was suggestive" and that her showing it to Harrison twice "was highly suggestive" because he did "not have a choice [but] to pick [the] individual in the second lineup." (Doc. #33 at 16-17).

identification.  Indeed, Brown's case never went to trial and Harrison's identification of Brown as the shooter was never presented by a prosecutor to a jury.

Nor has Brown alleged or shown "extraordinary circumstances," such as police coercion through physical force, *Hensley*, 818 F.2d at 650 n.4, that might compel a different result.[6]  *See supra* note 4.  Thus, Brown "merely [states] the purported violation of a prophylactic rule which resulted in the deprivation of his liberty," and not a violation of his core right to a fair trial.  *Hutsell*, 5 F.3d at 1005.  As the *Hutsell* court noted, the fact that an unduly suggestive lineup results in the accused's pretrial detention does not itself rise to a constitutional violation.  *Id.* ("the defendants in *Hensley* could not have violated the plaintiff's constitutional rights since the plaintiff was never tried; and the plaintiff had no cause of action for being wrongly incarcerated for over 100 days.").  As a result, regardless of whether the photographic lineup was unduly suggestive, Brown's due process claim fails to allege a constitutional violation under § 1983.  *Id.* Summary judgment on this issue should therefore be granted to Defendants.

### b.  Brown's State and Constitutional Claims of Unreasonable Seizure, False Arrest, False Imprisonment, and Malicious Prosecution

Brown's complaint alleges unreasonable seizure, false arrest, false imprisonment, and malicious prosecution.  (Doc. #1 at 5, 9-10).  "Each of these claims require [the] Plaintiff to show that there was not probable cause for his arrest."  *Parker v. City of Taylor*, No. 15-10113, 2016 WL 454464, at *2 (E.D. Mich. Feb. 5, 2016) (internal citations omitted).  "That is, if probable cause for [the] Plaintiff's arrest existed, these claims are precluded."  *Id.*

---

[6] At most, Brown has raised marginal questions of fact about (1) whether Harrison identified Brown after being shown an initial six-subject photographic array or only after also being shown a separate picture of Brown with facial hair, and (2) whether Harrison requested the additional picture to aid him in making an identification.  (Docs. #24-5 at 7-9; #33 at 10-11, 53-56, 62-63, 67-69).  While Harrison's testimony vacillated somewhat as to both of these issues (*id.*), he unequivocally testified that "[w]hen [he saw] the picture, [he] knew without a doubt that was him" and that he was "positive" in his photographic lineup identification.  (Doc. #33 at 56, 69).

The Supreme Court has held that "probable cause exists when the police have 'reasonably trustworthy information [that is] sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense' based on 'the facts and circumstances within [the police's] knowledge' at the moment in question." *Peet v. City of Detroit*, 502 F.3d 557, 563-64 (6th Cir. 2007) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *Legenzoff v. Steckel*, 564 F. App'x 136, 141 (6th Cir. 2014) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.") (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Probable cause is "reasonable grounds for belief, supported by 'less than *prima facie* proof, but more than mere suspicion.'" *Parker*, 2016 WL 454464, at *2 (quoting *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993)). "[P]robable cause determinations must be evaluated according to the information the police knew at the moment of the challenged conduct, not information learned for the first time afterwards." *Peet*, 502 F.3d at 565 (citing *Beck*, 379 U.S. at 91). "Probable cause does not depend on whether charges are brought or later successfully proven; rather, the question is whether the officers 'were justified in their belief that the plaintiff had probably committed or was committing a crime.'" *Parker*, 2016 WL 454464, at *2 (citing *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988)).

Brown argues that he was arrested without probable cause because (1) an anonymous tip led to him being placed in the photographic lineup, (2) Officer Brooks and Harrison essentially disagree on the circumstances surrounding Harrison's photographic identification of Brown, (3) Prosecutor John Casey was biased against him and had an improper motive to convict or detain him,[7] (4) Officer Brooks "manufactured" probable cause, and (5) Officer Brooks withheld

---

[7] Prosecutor John Casey is not a defendant in this case. In fact, on July 9, 2013, the Court denied

"exculpatory DNA evidence under oath" when she testified at the Suppression Hearing on November 12, 2010.[8]   (Doc. #33 at 21).

As to the anonymous tip, Brown argues that there is a lack of probable cause because the information received "was fabricated."   (Doc. #1 at ¶ 73).   Brown asserts this based on his belief that the tip was actually given by Pamela Brown Pulliam, his ex-girlfriend, who he thinks is Officer Brooks' aunt.   (*Id.* at ¶ 99).   Regarding Officer Brooks, Brown argues that she herself did not believe she had probable cause (*id.* at ¶ 52) but "knowingly created [it] when [there] was none."   (*Id.* at ¶ 95).   He alleges that she arrested him "with a reckless disregard for the truth" (*id.* at ¶ 76) and "an improper purpose" (*id.* at ¶ 93), where the DNA results ended up showing he was not the shooter.   (*Id.* at ¶¶ 65, 71, 81, 85, 87, 92).   Brown argues that Officer Brooks lacked probable cause because she "could not point to one piece of evidence that tied [him] to the homicide while under oath" and "never had any evidence to even display [his] photo for a lineup as a primary suspect."   (*Id.* at ¶¶ 52-53, 73).   He argues that Harrison's identification "suppl[ied]

---

Brown's request to add Casey as a defendant.   (Doc. #23 at 8).   The Court determined that "the conduct alleged in the Complaint 'falls within the range of advocacy functions sufficiently related to the judicial process to warrant absolute prosecutorial immunity.'"   (*Id.*) (citing *Ireland v. Tunis*, 113 F.3d 1435, 1445 (6th Cir. 1997)).

[8] Brown also argues that his arrest while "awaiting DNA results" constitutes unreasonable seizure, false arrest, false imprisonment, and malicious prosecution.   (Doc. #33 at 18).   More specifically, he argues that Officer Brooks and Casey had these results and "suppressed [this] exculpatory evidence," which he "never knew existed" and did not receive until May 2013.   (*Id.* at 18-19).   While it is unclear when Officer Brooks received the DNA results and whether they were, in fact, withheld, this argument gets Brown nowhere because he admits that he was arrested on August 20, 2010 (Doc. #1 at ¶ 19), months before the examination was completed on November 5, 2010.   (Doc. #33 at 80).   As a matter of law, evidence which post-dates Brown's arrest cannot be used to show a lack of probable cause for the arrest itself.   *Peet v. City of Detroit*, 502 F.3d 557, 565 (6th Cir. 2007) (holding that "post-arrest evidence does not show that probable cause was lacking . . . when the police arrested [the plaintiff]" and is "therefore irrelevant to the probable cause issue . . . because [it relates to something that] occurred after [the plaintiff] had already been arrested"); *Parker v. City of Taylor*, No. 15-10113, 2016 WL 454464, at *2 (E.D. Mich. Feb. 5, 2016).

the only evidence that connected [him] to the crime"[9] (*id.* at ¶ 59) and that there was no physical or forensic evidence.  (*Id.* at ¶¶ 49, 75).  Although Brown recognizes that his arrest originated from a valid warrant, he argues that "the warrant was procured by false statements or omissions by Officer Brooks with respect to the photographic lineup."  (Doc. #33 at 18).  Still, Brown points to no case law in support of his probable cause arguments.[10]

The Sixth Circuit has "allow[ed] a plaintiff's claim to proceed [past summary judgment] where she alleged that detectives supplied the state court with 'a false version of the facts.'" *Flowers v. City of Detroit*, 306 F. App'x 984, 987 (6th Cir. 2009) (citing *Hinchman v. Moore*, 213 F.3d 198, 202 (6th Cir. 2002)) ("And more recently, in *Peet v. City of Detroit*, 502 F.3d 557, 566 (6th Cir. 2007), we observed that the exception to the usual preclusive effect of a state court probable cause determination applies when there is evidence of a 'police officer's supplying false information to establish probable cause.'").  But this allegation must be supported by evidence of false information.  *Id.* (affirming summary judgment for the defendants where the plaintiff characterized the defendants' conduct as "false" but "offered no evidence upon which a reasonable jury could conclude that they deliberately provided the judge with false information").  Brown does not satisfy this evidentiary requirement.

When Harrison testified on September 1, 2010 in the 36th District Court, Judge Noceba found that there was "sufficient probable cause that an offense was committed and that [Brown] committed it."  (Doc. #33 at 77-78); *see Ledbetter*, 35 F.3d at 1071 (holding that a district court

---

[9] Brown points out that Harrison's identification was relied upon even though he gave "several different descriptions of the perpetrator," picked Brown's picture out of the lineup two months after the incident, and the photo of Brown that was displayed was from three years earlier, where Brown was fifty pounds heavier.  (Doc. #1 at ¶¶ 78-79).

[10] Brown cites to cases regarding his allegation that the government "improperly withheld exculpatory evidence," but this does not support his arguments regarding lack of probable cause. (Doc. #33 at 19-20).

is to consider and "give proper deference to" factual determinations made by a state court).

Brown's allegation that Officer Brooks relied on "false" information is not supported by

evidence in the record.  In addition, Brown offers no evidence upon which a reasonable jury

could conclude that Officer Brooks provided false information to the magistrate who signed the

warrant so as to allow Brown's probable cause claim to survive summary judgment.  Nothing in

the request for a warrant or the warrant itself indicates that it was based on "false" information

(Docs. #24-3, #24-4), and Brown himself even acknowledged that the warrant was "valid."

(Doc. #33 at 18).

No reasonable juror could disagree that Harrison's identification and testimony made it

reasonable to believe, at that time, that Brown had committed the murder, thus supplying

probable cause to arrest him.  On August 17, 2010, Harrison selected Brown's picture from the

photographic lineup and indicated that he recognized that person "from the barbershop, chasing

[him] while firing shots at [him]."  (Doc. #24-2 at 2).  Harrison added that the individual "had a

goatee at the time of the shooting" and a stainless steel gun.  (*Id.*).  When testifying about the

photographic lineup, Harrison confirmed that he had identified Brown and expressed certainty

regarding the identification.  (Doc. #33 at 54) (" . . . I was definitely able to make an ID out on

him."); (*Id.* at 69) ("When I [saw] the picture, I knew without a doubt that that was him.").

Probable cause does not require a perfect identification, "and witness identifications are

'entitled to a presumption of reliability and veracity.'"  *Legenzoff*, 564 F. App'x at 143 (citing

*Ahlers v. Schebil*, 188 F.3d at 365, 371 (6th Cir. 1999)); *Peet*, 502 F.3d at 564 (finding an

eyewitness statement to be "trustworthy information justifying a reasonable belief" that the

plaintiffs robbed the victim); *Stahl v. Czernik*, No. 11-2266, 496 F. App'x 621, 624 (6th Cir.

Aug. 27, 2012) (explaining that eyewitness identifications are given a "presumption of reliability

and veracity" because they "are based on firsthand observations"). Indeed, the Sixth Circuit "has held that an eye witness identification and accusation, by itself, is sufficient to establish probable cause." *Legenzoff*, 564 F. App'x at 142. In fact, "a *single* witness identification is sufficient to establish probable cause."[11] *Id.* at 143 (emphasis in original).

Even viewed in the light most favorable to Brown, Harrison's identification was sufficient to establish probable cause to arrest Brown. When Officer Brooks arrested him, she had no "apparent reason" to believe that Harrison was lying, made inaccurate statements, or was mistaken. *Stahl*, 496 F. App'x at 624; *see supra* note 11. That Brown was ultimately released due to the post-arrest DNA test is irrelevant to the analysis of Brown's claims for unreasonable seizure, false arrest, false imprisonment, and malicious prosecution. Accordingly, summary judgment should be granted on these claims.

### c. *Qualified Immunity as to Brown's Civil Rights Claims Against Officer Brooks*

Defendants assert that Officer Brooks is entitled to qualified immunity as to Brown's civil rights claims and that Brown cannot carry his burden of demonstrating that she is not entitled to it. (Doc. #24 at 19). Under the doctrine of qualified immunity, governmental officials performing discretionary functions are shielded from civil liability unless their conduct violates a clearly established constitutional right. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is premised upon the avoidance of unnecessary burdens of litigation, and therefore the privilege is immunity from suit and not a mere defense to liability. *See Saucier*,

---

[11] Probable cause based on an eyewitness identification may come into question where "at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken." *Stahl v. Czernik*, No. 11-2266, 496 F. App'x 621, 624 (6th Cir. Aug. 27, 2012) (citing *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999)). But Brown has not provided any evidence that would implicate this exception to the deference generally afforded an eyewitness identification.

533 U.S. at 200.

Determining the applicability of qualified immunity requires a two-step inquiry into whether the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *Id.* at 201. A plaintiff must establish both of these prongs "[t]o overcome an officer's entitlement to qualified immunity." *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003). But in conducting this inquiry, the court is "permitted to exercise [its] sound discretion in deciding which of the[m] . . . should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see also Bishop v. Hackel*, 636 F.3d 757, 772 (6th Cir. 2011). With respect to the second prong of the test for qualified immunity, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation that he confronted." *Saucier*, 533 U.S. at 202.

Brown argues that "Harrison's account of the photo lineup . . . show[s] [deliberate] constitutional violation[] by [Officer] Brooks."[12] (Doc. #33 at 23). He argues that Officer Brooks "knew" that (1) Brown had "a constitutional right not to be 'framed'" (Doc. #38 at 5); (2) "under no circumstances could she show a single picture lineup of a suspect to a witness" (*id.*); and (3) "the showing of a single picture [in this situation, where in Brown's view, it was 'impermissibly suggestive'] was a violation of [his] constitutional rights." (*Id.* at 6). Brown

---

[12] Brown also argues that the alleged suppression of the DNA results by Officer Brooks, including her not mentioning them during the November 2010 hearing, also shows her "total disregard" for his constitutional rights. (Doc. #33 at 23). But the DNA results do not support this argument because, as discussed above, they are irrelevant to a probable cause analysis. *See supra* note 8. In addition, Brown failed to bring this suppression allegation as a constitutional claim in his complaint and, for the reasons explained below, he did not properly raise it as a *Brady* claim. *See infra* at 19-22.

asserts that Officer Brooks "cannot shield herself from liability because she knew the identification that she manipulated was a violation of [his] due process rights." (*Id.* at 7). In addition, Brown argues that Officer Brooks "could not have reasonably believed that she had probable cause to arrest [him] for any crime." (*Id.* at 5).

The constitutional rights at issue in this case both involve the Fourth Amendment: (1) the right to be free from unreasonable searches and seizures, and (2) the right to be arrested only upon probable cause.[13] *Answers v. Hickman Cty., Tenn.*, 700 F.3d 845, 854 (6th Cir. 2012); *Crockett v. Cumberland Coll.*, 316 F.3d 571, 579-80 (6th Cir. 2003). A violation of both of these rights hinges on whether or not there was probable cause for the issuing of the warrant. Where the Fourth Amendment requires that the police obtain a warrant to conduct searches and seizures, "probable cause" is the applicable standard for testing "the constitutional mandate of reasonableness." *Camara v. Mun. Court of City & Cty. of San Francisco*, 387 U.S. 523, 534 (1967); *Terry v. Ohio*, 392 U.S. 1, 20 (1968). Similarly, the Fourth Amendment "requires that arrest warrants be issued only upon a showing of probable cause." *Vakilian*, 335 F.3d at 517. Therefore, "[p]olice officers are entitled to qualified immunity . . . unless the warrant is so utterly lacking in probable cause that no officer of reasonable competence would have concluded that a warrant should issue." *Hutsell*, 5 F.3d at 1003.

Here, the Court has already determined that there is no question of fact that probable cause existed to arrest Brown. *See supra* at 7-12. Thus, Brown cannot satisfy the first prong of the qualified immunity analysis because there is no finding that Defendants violated a constitutional right. *Stahl*, 496 F. App'x at 623-24, 629 (concluding that the defendant "did not commit a constitutional violation because he had probable cause to arrest the plaintiff," and

---

[13] As explained above, Brown's Fourteenth Amendment due process claim fails to properly allege a constitutional violation. *See supra* at 4-7.

therefore, "we need not decide whether a right was clearly established").   Accordingly, Defendants' motion for summary judgment on the issue of qualified immunity should be granted.

### d.   Brown's Intentional Infliction of Emotional Distress Claim

Brown pleads a claim for intentional infliction of emotional distress ("IIED") against Defendants.   To state a *prima facie* case of IIED, a plaintiff must establish four elements:   (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress.   *See Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 777 (6th Cir. 1996) (citing *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602 (1985)).   The outrageous conduct requirement is satisfied only by conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."   *Roberts*, 422 Mich. at 603 (quoting Restatement (Second) of Torts §46, cmt. d (1965)).   Liability will not result from "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."   *Mino v. Clio Sch. Dist.*, 255 Mich. App. 60, 80 (2003) (internal quotations omitted).   Rather, liability arises only "where the distress inflicted is so severe that no reasonable man could be expected to endure it."   *Roberts*, 422 Mich. at 608-09; *see also Andrews v. Prudential Sec., Inc.*, 160 F.3d 304, 309 (6th Cir. 1998).   "A plaintiff can show that a defendant specifically intended to cause a plaintiff emotional distress or that a defendant's conduct was so reckless that 'any reasonable person would know emotional distress would result.'"   *Garretson v. City of Madison Heights*, 407 F.3d 789, 799 (6th Cir. 2005) (citing *Lewis v. LeGrow,* 258 Mich. App. 175, 670 N.W.2d 675, 689 (2003)).

The crux of Brown's IIED claim against Officer Brooks is as follows:   "Detective Brooks['] behavior spoke for itself [sic] it was so outrageous to try and send and [sic] innocent person to prison alone is bad enough but natural life it's barbaric."   (Doc. #1 at ¶ 112).   Once

again, Brown's claim is based on Officer Brooks allegedly conducting an improper photographic lineup, acting without probable cause, and suppressing exculpatory evidence.  (Doc. #33 at 24). Brown also alleges that she acted "in bad faith with malice" and that "her actions intended to cause emotional distress."  (*Id.*).

But Brown has not provided the requisite proof for an IIED claim to survive summary judgment.  Most importantly, for the reasons discussed above, he has not provided evidence that Officer Brooks actually engaged in extreme and outrageous conduct or intended to cause him emotional distress.[14]  *Garretson*, 407 F.3d at 799 (finding that summary judgment was appropriate, in part, because the plaintiff "has not offered proof that the officers *intended* to subject her to emotional distress") (emphasis in original).  Accordingly, summary judgment is appropriate as to Brown's IIED claim.

### e.  *Brown's Municipal Liability Claim*

Brown asserts that the City of Detroit is liable under § 1983 "for failing to adequately train [D]etective Brooks regarding the Constitutional rights of criminal defendants."  (Doc. #1 at ¶ 137).  More broadly, he argues that the City is liable for having a "custom of using overly suggestive photo lineups" and for "fail[ing] to train its officers in proper identification techniques."  (Doc. #33 at 25).  The law is clear that a municipality may not be held vicariously liable for the actions of its employees under § 1983.  *See Connick v. Thompson*, 563 U.S. 51, 60-62, (2011); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Rather, a municipality is

---

[14] Defendants' argument that Brown's IIED claim is "an intentional tort claim and barred by governmental immunity" lacks merit.  (Doc. #24 at 20).  The Sixth Circuit has explicitly noted that "Michigan law does not extend governmental immunity to intentional torts."  *McGuire v. City of Royal Oak*, 295 F. App'x 736, 739 (6th Cir. 2008) (citing *Sudul v. City of Hamtramck,* 221 Mich. Ct. App. 455, 458, 562 N.W.2d 478, 479 (Mich. 1997) ("We especially also hold that an individual employee's intentional torts are not shielded by our governmental immunity statute.")).

liable only when its official policy or custom directly causes the plaintiff's injury. *Id.* Accordingly, "a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell*, 436 U.S. at 694). *See also Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (noting that under *Monell*, a plaintiff asserting a § 1983 claim "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom").

To state a § 1983 "*Monell*" claim, the plaintiff must show:  (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *See Burgess*, 735 F.3d at 478.  Moreover, "[t]o establish municipal liability, a plaintiff must show that the alleged failure to properly train its officers 'amounts to a deliberate indifference to the rights of persons with whom police come into contact,'" where deliberate indifference "requires showing that a 'municipal actor disregarded a known or obvious consequence of his action.'" *Parker*, 2016 WL 454464, at *3 (internal citations omitted).  If one particular officer is not trained properly, that alone is not sufficient to hold the city liable, "for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390-91 (1989).

Brown alleges that the City of Detroit was "deliberately indifferent" to the need to train Officer Brooks and to offer trainings on the constitutional rights of citizens.  (Doc. #1 at ¶ 140). But Brown does not identify a particular policy or custom that caused his injury, and instead offers only a conclusory and circular assertion that one must exist as a result of the circumstances

as he alleges them.  For instance, he states that it is "obvious that Brooks has not had any training

on key duties with direct impact on the constitutional rights of citizens" and that given how

things played out in this case, it is "only logical" that "she was never trained properly by the City

of Detroit."  (Doc. #33 at 26-27).  Such conclusory, self-serving assertions are insufficient to

demonstrate that a policy or custom was in place, and thus, are insufficient to withstand

summary judgment.[15]  *See Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008)

("[C]onclusory statements are not sufficient to survive any motion for summary judgment, much

less to allow a municipality to be held liable for the acts of its employees.").  The Court also

notes that Brown does not present evidence that demonstrates "a pattern of regular constitutional

violations by [Officer Brooks] that [the City of Detroit] ignored."  *Parker*, 2016 WL 454464, at

*4.  Indeed, he proffers no evidence at all regarding the training that the City of Detroit's police

---

[15] Brown does argue that the "facts of this case show that the City's photo line-up form is direct evidence of a custom or practice" because Officer Brooks allegedly "places the person she wants pick[ed] in the Number 1 position" in the six-photograph array.  (Doc. #33 at 25).  According to Brown, the witness then picks "number 1"; whether they are selecting the picture from the photo array or the single picture shown afterwards, their answer is the same.  (*Id.*).  Brown alleges that Officer Brooks "will then have them circle number 1 on the photo line-up form like the single picture was never shown."  (*Id.*).  While this arguably specifies a purported "custom or practice," if fails to overcome summary judgment for a few reasons.  First, Brown offers no evidence or case law standing for the proposition that merely placing a lineup photo in the "Number 1" position will inevitably lead the identifier to select that photo.  This argument has been rejected by at least one United States Court of Appeals.  *See United States v. Sanders*, 275 F. App'x 121, 124 (3d Cir. 2008) (finding the defendant's argument that "his photo was in too prominent a position within the array" to be without merit where the photo was displayed "in the upper left-hand corner of the array").  And, as the state court judge recognized in approving the photographic lineup in this case, the lineup card "states very clearly [] pay no attention to the markings or numbers, and when you look at all the photographs tell me whether you see a person – you see the person who committed the crime."  (Docs. #24-5 at 26-27; #24-2).  Second, Brown has not presented evidence that as a matter of course, this is how Officer Brooks conducts her photographic lineups.  Instead, he merely alleges that "the existence of pre-printed forms" demonstrates that Officer Brooks had a lengthy "establish[ed] practice" of showing a witness a single photograph following a six-photograph array.  (Doc. #33 at 26).  But again, Brown does not substantiate this allegation with any evidence regarding a pre-printed form or the practice he is alleging.

officers receive.  In sum, it is appropriate to grant summary judgment as to Brown's municipal liability claim.

### f.  Brown's "Brady" Claim

In Brown's response to Defendants' motion for summary judgment, he raises the argument for the first time that "[t]he government improperly withheld exculpatory evidence" from him under *Brady v. Maryland*, 373 U.S. 83 (1963).  (Doc. #33 at 19).  "In *Brady,* the Supreme Court held that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'"  *Bell v. Bell*, 512 F.3d 223, 231 (6th Cir. 2008) (citing *Brady*, 373 U.S. at 87).  "A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial."  *United States v. Bagley*, 473 U.S. 667, 674-75 (1985) (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976)).

The Sixth Circuit has established that "[a] successful *Brady* claim requires a three-part showing:  (1) that the evidence in question be favorable; (2) that the state suppressed the relevant evidence, either purposefully or inadvertently; (3) and that the state's actions resulted in prejudice."  *Bell*, 512 F.3d at 231 (citing *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999)).  The petitioner may demonstrate prejudice – which is necessary for establishing the "materiality" requirement – "only by 'convic[ing] us that 'there is a reasonable probability' that the result of the trial would have been different if the suppressed documents had been disclosed to the defense.'"  *Spirko v. Mitchell*, 368 F.3d 603, 610-12 (6th Cir. 2004) (quoting *Strickler,* 527 U.S. at 289-90).  Although "'*Brady* violation' is sometimes used to refer to *any* breach of the broad obligation to disclose exculpatory evidence, . . . strictly speaking, there is never a real '*Brady*

violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Jalowiec v. Bradshaw*, 657 F.3d 293, 306 (6th Cir. 2011), *as amended* (Nov. 23, 2011) (emphasis added); *Spirko*, 368 F.3d at 609 (quoting *Strickler*, 527 U.S. at 281-82).

Brown's *Brady* claim is based on him receiving the exculpatory DNA results (indicating that Brown's DNA did not match the DNA on the items found after the shooting) in May 2013, after they had allegedly been suppressed by Officer Brooks. (Doc. #38 at 9). Brown argues that because the document itself indicates a November 5, 2010 "completion date," Officer Brooks, as the officer in charge, had knowledge of this document since that date. (*Id.* at 9-10). Brown alleges that when Officer Brooks testified before Circuit Judge Annette J. Berry on November 12, 2010, Officer Brooks was aware of the DNA results but did not disclose them. (*Id.*). He argues that the alleged suppression of this document "led to [him] being illegally detained without probable cause" – because its supposed unavailability caused the trial date to be pushed back from November 29, 2010 to February 1, 2011 – and "affected Judge Berry's decision making ability" at the hearing – because had she known about the DNA results, she would have dismissed the charges against Brown. (*Id.*). Moreover, Brown mentions Officer Brooks' alleged failure to disclose the DNA results as shaping all of his aforementioned claims. (Doc. #33 at 13, 19, 21, 23-24, 26).

As a preliminary matter, Brown did not properly amend his complaint to add this *Brady* claim under Federal Rule of Civil Procedure 15. Regardless, even if this claim had been properly added, it still fails. "There is no general constitutional right to discovery in a criminal case," *United States v. Bencs*, 28 F.3d 555, 560-61 (6th Cir. 1994) (internal citations omitted), and *Brady* "did not create a constitutional right of pre-trial discovery in a criminal proceeding."

*United States v. Presser*, 844 F.2d 1275, 1284 (6th Cir. 1988) (citing *Weatherford v. Bursey,* 429 U.S. 545, 559 (1977)).  Instead, *Brady*'s "ultimate concern" is "ensuring that criminal defendants receive a 'fundamentally fair' trial."  *Moldowan v. City of Warren*, 578 F.3d 351, 378 (6th Cir. 2009); *Spirko*, 368 F.3d at 609; *Presser*, 844 F.2d at 1283 ("Preserving the defendant's ability to defend himself effectively at trial is the underlying purpose of the criminal discovery rules.  Therefore, so long as the defendant is given [the previously disclosed material] in time for use at trial, we fail to see how the Constitution is violated.").  "*Brady*'s obligations 'appl[y] to evidence material to sentencing.'"  *Jefferson v. United States*, 730 F.3d 537, 554 n.4 (6th Cir. 2013).  And in general, *Brady* "does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose."  *Bencs*, 28 F.3d at 560-61 (internal citations omitted).  The Sixth Circuit has held that *Brady* is not only strictly applicable to prosecutors, but "the police can commit a constitutional deprivation analogous to that recognized in *Brady* by withholding or suppressing exculpatory material."  *Moldowan*, 578 F.3d at 378-79.

Here, Brown's case was dismissed on January 19, 2011 – before going to trial – and Frank Hardy was ultimately convicted for the shooting at the barbershop.  (Doc. #1 at ¶¶ 39-40).  Brown's *Brady* claim lacks merit because he cannot show prejudice:  since there was no trial – and importantly, no conviction – he cannot show that the trial was fundamentally unfair or that the result of the trial would have been different had the DNA results been disclosed to him.  *Spirko*, 368 F.3d at 610-13 (finding the alleged *Brady* claim to be "without merit" because the plaintiff "wholly failed to demonstrate a reasonable probability that if the information to which he points had been disclosed to him 'the result of the trial would have been different'") (quoting *Strickler,* 527 U.S. at 289); *Jalowiec*, 657 F.3d at 307 (concluding there was no *Brady* violation, in part, because the plaintiff did not demonstrate that the nondisclosed evidence "would put the

whole case in such a different light as to undermine confidence in the verdict" and therefore, he did not meet the materiality and prejudice requirements for making such a claim).  Brown has also not shown that Officer Brooks actually suppressed the DNA results.  Moreover, the DNA results were eventually disclosed to Brown; they were not withheld from him indefinitely.  Thus, Brown's *Brady* claim is improper – both procedurally and substantively.[16]

## III.   CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(Doc. #24)** be **GRANTED**.


Dated: March 7, 2017                                    s/David R. Grand
Ann Arbor, Michigan                               DAVID R. GRAND
                                                                    United States Magistrate Judge


## REVIEW


Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.

---

[16] In his June 25, 2014 surreply, Brown also makes a request for "full discovery."  (Doc. #38 at 14).  This request will be denied.  Discovery in this case ended on June 17, 2013 (Doc. #14), which means that Brown's instant discovery request was made close to one year after this date. In addition, Defendants have already filed a dispositive motion, which at this point, has been fully briefed; that is the subject of this Report and Recommendation.  The Court recognizes that Brown filed a Motion for Discovery on July 26, 2013 (Doc. #27), before the case was stayed and administratively closed on July 31, 2013 (Doc. #28), and then again on August 11, 2014 (Doc. #30), after the bankruptcy stay was lifted.  But the July 26, 2013 motion was also filed after the close of discovery and will be denied on that basis, and on February 3, 2015, this Court denied the August 11, 2014 motion containing Brown's request for certain other discovery.  (Doc. #40). On August 31, 2015, that denial was affirmed over Brown's objection.  (Doc. #43).

1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

*Note these additional requirements at the direction of Judge Cleland:*

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via email addresses the court has on file.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager

Dated:  March 7, 2017

23